UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PHL Variable Insurance Company,

    Plaintiff and
    Cross-Claim Defendant,    MEMORANDUM OPINION
                                          AND ORDER
                                          Civil No. 09-1923

v.

Sidney Nachowitz 2007 Irrevocable
Trust, by and through its trustee,
BNC National Bank,

    Defendant,

v.

Global Secured Capital Fund, LP,

    Cross-Claim Plaintiff.

_____

    David T. McDowell and Allison M. Abel, Edison, McDowell & Hetherington, LLP and Stephen P. Lucke and Bryan Keane, Dorsey & Whitney, LLP, Counsel for Plaintiff/Third-Party Defendant PHL Variable Insurance Company.

    Tim Griffin and Jeff Ehrich, Leonard, Street and Deinard, Professional Association, Counsel for Cross-Claim Plaintiff Global Secured Capital Fund, LP.
_____

    This matter is before the Court on Cross-Claim Plaintiff Global Secured

Capital Fund, LP's ("Global") motion for summary judgment.

**Introduction**

CFC of Delaware II LLC ("CFC"), Global's predecessor-in-interest, provided financing to Defendant The Sidney Nachowitz 2007 Irrevocable Trust (the "Trust") to pay premiums for a $10 million life insurance policy (the "Policy") issued by Plaintiff/Cross-Claim Defendant PHL Variable Insurance Company ("Phoenix"). It was later determined that the Policy was obtained through fraud. Phoenix brought this action to rescind the Policy and to retain the premiums paid to cover costs Phoenix incurred in issuing the Policy, including commissions paid and attorney's fees and costs in maintaining this lawsuit.

The Court granted partial summary judgment in favor of Phoenix pursuant to the stipulation entered into between Phoenix and the Trust. [Doc. No. 45.] The Court rescinded the Policy and ordered Phoenix to deposit with the Clerk of Court the premiums paid in the amount of $536,200. [Doc. No. 53.] On March 8, 2010, Phoenix deposited such sum in the Court's registry.

Global now moves for summary judgment on its cross-claim, arguing that it is entitled to the monies paid into the Court's registry pursuant to its perfected security interest in unearned premiums paid on the Policy. Phoenix opposes the

motion, arguing that Global's claims fail as a matter of law, that genuine issues of fact exist or, in the alternative, that the motion is premature, as discovery is not yet complete.

**Factual Background**

As discussed above, Phoenix issued the Policy to the Trust based on certain misrepresentations contained in the Application as to Nachowitz's net worth. The Application was signed by both Nachowitz and by BNC National Bank ("BNC") as trustee of the Trust. (Declaration of Carlos Jativa, Ex. F.) The Application contained an affirmation by which Nachowitz and BNC both affirmed that the information contained therein was "full, complete, and true to the best knowledge and belief of the undersigned . . ." (Id., Ex. A, Section XII.) The Policy issued in October 2007. (Id., Ex. F.)

The Trust secured financing to pay the premiums from CFC pursuant to a Term Financing Facility Agreement ("Loan Agreement")[1]. (Id., Ex. C.) As security for the Loan Agreement, the Trust assigned CFC a security interest in, *inter alia*: the Policy, any and all deposit accounts into which any proceeds or

---

[1] The Loan Agreement was executed by BNC on behalf of the Trust and on behalf of CFC, as Administrative Agent.

other unearned premiums, distributions, refunds or repayments relating to or arising from the Policy, all general intangibles relating to or constituting any or all of the foregoing, and any and all replacements or substitutions for, distributions on or proceeds of any or all of the foregoing. (Id., Ex. C at § 2.11.)

On December 31, 2007, CFC borrowed money from Global to pay the premiums on the Policy pursuant to a Secured Promissory Note (the "Note"). (Id., Ex. E.) Pursuant to the Note, Global loaned $566,900 to CFC to be used in connection with CFC's loan to the Trust. As security for this loan, CFC granted to Global a first priority Security Interest in: all property, rights and interests of CFC in the property pledged by the Trust, and all right, title, and interest of CFC in and to all present and future payments, proceeds, dividends, distributions, and interests and rights in connection with or related to the collateral listed above and all monies due or to become due and payable to CFC in connection with or related to such collateral or otherwise paid, issued or distributed. (Id. § 4.) Thereafter, CFC assigned to Global its rights under the Loan Agreement and certain collateral, including the Policy. (Id., Ex. G.)

Global asserts that Phoenix was notified in November 2007 that a third party would be financing the premiums. (Id., Exs. H and I.) A collateral

assignment was completed and submitted by the Trustee to Phoenix, which "assign[ed] and transfer[red] as collateral the [Policy] and all right, title, and interest therein unto CFC Collateral Holdings, LLC." (Id., Ex. I.) Phoenix signed an acknowledgment of the collateral assignment on December 26, 2007 in favor of CFC Collateral Holdings, LLC ("CFCCH"). (Id.) CFCCH was wholly owned by Global and created for the sole purpose of holding collateral assignments for loans made between Global and CFC. (Id. ¶ 12 and Ex. J.) Global later transferred the collateral assignment to a different wholly-owned Global entity called "Premium Finance Collateral Trust." (Id., Ex. I.) Phoenix was also notified of this assignment. (Id. ¶ 13, Ex. K.)

In early 2008, two UCC financing statements were filed in Minnesota and Arizona that identified CFC's security interest in the Policy and any accounts into which Policy proceeds or other unearned premiums, distributions, refunds or repayments relating to or arising from the Policy would be deposited. (Declaration of Timothy Griffin, Exs. A and B.)

**Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material

fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

**Analysis**

Global asserts that it is entitled to the monies in the Court's registry as it has a perfected security interest in "any and all deposit accounts into which any proceeds or other unearned premiums, distributions, refunds or repayments relating to or arising from the Life Policy may be deposited." (Id. Ex. C at § 2.11(c).) Global asserts that under Minnesota law, when an insurance policy is terminated early, the premiums in the insurer's possession are "unearned" during the time the insurer has not been exposed to risk of loss. Minn. Stat. § 72A.20, subd. 17(d); Taylor v. Grand Lodge A.O.U.W. of Minn. 96 Minn. 441,

447, 105 N.W. 408, 410-11 (1905). Where a policy is rescinded because it was void at its inception, the insurer ran no risk of loss and the entire premium is "unearned." See Nat'l Council of Knights & Ladies of Security v. Garber, 131 Minn. 16, 17, 154 N.W. 512, 513 (1915).

Phoenix responds that Global is not entitled to the relief sought because it cannot enforce a security interest in collateral (the premiums) to which the debtor (the Trust) had no right or title - as the Policy was obtained by fraud. This Court previously found in the Morello case that insurers are not required to return premiums when the policy at issue was obtained by fraud. (PHL Variable Ins. Co. v. Lucille E. Morello 2007 Irrevocable Trust et al., Civil No. 08-572, Doc. No. 146.) Phoenix argues that as the Trust is not entitled to the premiums, neither are the creditors of the Trust.

Phoenix argues that the cases cited by Global, Taylor and Garber do not support Global's position. In fact, Garber specifically states an insurer is entitled to retain premiums when the insurance policy was obtained through fraud. Id. 131 Minn. at 17-18. To find otherwise would perpetuate this type of fraud. See Taylor, 96 Minn. at 453 ("If the fraud is never discovered, the beneficiary under the policy which will be issued to him will receive the full benefit of the contract.

7

If it by chance is discovered, his estate will receive back all that has been paid by the guilty party, and the trouble and expense attending upon the transaction will be thrown upon the innocent party.")

Global responds that this Court's decision in Morello did not address the issue here - whether Global's perfected security interest in unearned premiums takes priority over Phoenix's unsecured, equitable claim. Global argues that the Minnesota legislature has recognized that premium financing companies are entitled to protection when an insurance policy is cancelled, and the insurer refunds unearned premiums to the insured, rather than the premium financing company. See Minn. Stat. § 59A.12.

Minn. Stat. § 59A.12, subd. applies when an insurance policy is cancelled. Here, the Policy was not cancelled, it was rescinded. Rescission and cancellation have two different legal meanings. See McQuarrie v. Wasecua Mut. Ins. Co., 337 N.W.2d 685 (Minn. 1983) (discussing difference between mutual rescission and cancellation by substitution); Glockel v. State Farm Mut. Auto Ins., Co., 400 N.W.2d 250, 255 (Neb. 1987) (recognizing that cancellation of an insurance policy terminates the policy as of the time the cancellation becomes effective, whereas rescission avoids the contract ab initio). Thus, the unearned premiums

8

referenced in Minn. Stat. § 59A.12 refers to premiums paid for a period of time that extends beyond the date of cancellation. Here, the Policy has been rescinded, therefore this statute is inapplicable. See <u>CUPAC, Inc. v. Daly Agency</u>, 414 N.W.2d 790 (Minn. Ct. App. 1987) (finding that Minn. Stat. § 59A.12 applies to cancelled policies, not expired policies).

Alternatively, Phoenix argues that summary judgment is not appropriate as Phoenix is entitled to conduct additional discovery. In support, Phoenix has submitted a Rule 56(f) affidavit, describing the additional evidence to be conducted that is relevant to the issues presented by this motion. (Affidavit of Alison Abel.) For example, the issue of Global's role in the fraudulent scheme to obtain $10 million in life insurance requires the discovery of complex financial evidence and the testimony of individuals potentially complicit in the fraud from creating the trust to authorizing misrepresentations. (<u>Id.</u> ¶ 7.) In addition, discovery received thus far has made it apparent that there are other third parties involved who were part of this scheme. (<u>Id.</u> ¶ 8.)

The law is clear that where an insurance policy is obtained through fraud, the insurer is not required to return the premiums paid to the insured. See <u>PHL Variable Ins. Co. v. Lucille E. Morello 2007 Irrevocable Trust et al.</u>, Civil No. 08-

572, Doc. No. 146 (D. Minn.). As pointed out by Global, however, the issue of secured versus unsecured interests in the premiums paid was not addressed in the <u>Morello</u> decision cited above. Prior to addressing that issue, the Court finds that the record should be complete as to what role, if any, the parties played in the fraud at issue here. Accordingly, the Court will deny Global's motion for summary judgment pursuant to Rule 56(f) and allow the parties a full and complete opportunity to obtain any relevant evidence that will assist the finder of fact in determining liability in this matter.

IT IS HEREBY ORDERED that Global Secured Capital Fund, LP's Motion for Summary Judgment [Doc. No. 69] is DENIED pursuant to Fed. R. Civ. P. 56(f).

Date: September 30, 2010

<u>s/ Michael J. Davis</u>
Michael J. Davis
Chief Judge
United States District Court